SHAWN M. REEVES, Petitioner v. YELLOW TRANSPORTATION, INC., and EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, Respondents

No. COA04-1140

(Filed 7 June 2005)

**1. Unemployment Compensation— judicial review—interlocutory appeal**

Appeal from superior court review of an Employment Security Commission decision is as provided in civil cases, and in general may not be from an interlocutory order. The trial court here did not rule on the merits of the claim and the appeal was dismissed as interlocutory.

**2. Unemployment Compensation— discharge for substantial fault—findings**

Employment Security Commission findings concerning problems in petitioner's performance of loading and driving duties for a shipping company were presumed correct on appeal because plaintiff did not except to them, and those findings supported the conclusion that petitioner was discharged for substantial fault.

**3. Unemployment Compensation— disqualification—no reduction—supported by findings**

The Employment Security Commission decision not to reduce the period of petitioner's disqualification from unemployment insurance benefits was supported by the findings and did not constitute error.

Appeal by petitioner from orders entered 9 June 2004 by Judge Wade Barber in Orange County Superior Court. Heard in the Court of Appeals 24 March 2005.

*Thomas H. Hodges, Jr., for respondent-appellee Employment Security Commission of North Carolina.*

*Daniel F. Read, for petitioner-appellant.*

LEVINSON, Judge.

Petitioner (Shawn Reeves) appeals from two orders of the trial court that reviewed orders by respondent North Carolina Employment Security Commission (ESC). We dismiss in part and affirm in part.

REEVES v. YELLOW TRANSP., INC.

[170 N.C. App. 610 (2005)]

The factual and procedural history of this case is summarized as follows: In April 2002 petitioner began working for respondent Yellow Transportation Inc., a shipping and transportation company, at its Morrisville, North Carolina shipping terminal. Petitioner's employment as a dock worker and city driver required him to load and unload freight, transport materials to specified destinations, and perform various other duties under Yellow Transportation's supervision. He was also required to record pertinent data, such as freight location or movement, or odometer readings.

In August and September of 2002, petitioner received several written warnings about errors or omissions in his work, including: (1) a written warning for failure to record an odometer reading; (2) a one day suspension for error in recording freight data; (3) a three day suspension for failure to load material in the proper place; and (4) a fourth warning, accompanied by a discharge letter, for failure to load certain freight as directed. Petitioner grieved each of these written warnings, and a meeting was conducted as provided by the collective bargaining agreement between Yellow Transportation and petitioner's union. The meeting resulted in an agreement that petitioner would serve a three day suspension and that Yellow Transportation would rescind a fifth warning alleging that petitioner had been involved in a preventable accident. Petitioner served the three day suspension in October 2002. On 7 February 2003 Yellow Transportation issued petitioner another discharge letter, this time for his failure to properly transfer bags of salt from a pallet to a storage trailer. On 17 February 2003 the company issued petitioner a third discharge letter for not sweeping out an empty trailer as he had been instructed. Petitioner grieved both discharges, which were reviewed by a committee that included representatives of petitioner's union and Yellow Transportation. This committee reduced the 17 February discharge to a warning, but sustained petitioner's 7 February 2003 discharge. Petitioner was discharged from his employment, and last worked for Yellow Transportation on 17 March 2003.

After his discharge petitioner filed a claim with the North Carolina ESC, effective 9 February 2003, seeking unemployment insurance benefits (UID). Petitioner's claim for UI benefits was denied by an ESC adjudicator, pursuant to N.C.G.S. § 96-14(2) (2003), on the basis that he was discharged for misconduct. Petitioner appealed the adjudicator's decision, and his claim was heard by an ESC Appeals Referee. The Referee issued a decision finding petitioner was discharged for substantial fault not rising to the level of

misconduct, and disqualifying petitioner from UI benefits for a period of four weeks. Petitioner appealed to the ESC, and in Docket 03(UI)6077 the ESC modified the decision of the Appeals Referee by disqualifying petitioner from benefits for nine weeks.

Petitioner also filed another claim on 23 March 2003, and requested that it be made effective as of 16 March 2003. An Appeals Referee found petitioner was disqualified from receiving benefits for that week because he had not timely filed the claim. On appeal, the ESC in Docket 03(UI)7400 upheld this decision.

Petitioner appealed both of the ESC's decisions to superior court. On 9 June 2004 the trial court issued an order in Docket 03(UI)7400, remanding the case to the Commission for entry of a new order. Regarding Docket 03(UI)6077, the trial court ruled that "the Employment Security Commission's Findings Of Fact were based upon competent evidence contained in the record; the Employment Security Commission properly applied the law to those facts; and that Decision No. 03(UI)6077 should be affirmed in its entirety." Petitioner appealed both of the trial court's orders to this Court.

## Appeal from Docket 03(UI)7400

[1] Appeal from the trial court's review of an ESC decision is governed by N.C.G.S. § 96-15(i) (2003), which provides in relevant part that "appeal may be taken from the judgment of the superior court, as provided in civil cases." In the instant case, we conclude that appeal from Docket 03(UI)7400 is not authorized by the North Carolina Rules of Civil Procedure.

An order "is either interlocutory or the final determination of the rights of the parties." N.C.G.S. § 1A-1, Rule 54(a) (2003). "The distinction between the two was addressed in *Veazey v. Durham*, 231 N.C. 354, [361-62], 57 S.E.2d 377, [381] (1950), wherein the Court stated: 'A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. . . . An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.'" *Embler v. Embler*, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001).

In Docket 03(UI)7400, the trial court did not rule on the merits of petitioner's claim. Instead, the court found that the ESC's order in

Docket 03(UI)7400 did not "address all of the relevant issues raised by the record" and that the findings were incomplete and failed to set out the sequence of events regarding the timing and notification of petitioner's discharge. The court concluded that "questions raised by the record need to be addressed by the ESC in more specific Findings of Fact and Conclusions of Law" and remanded Docket 03(UI)7400 to the ESC for "further Findings of Fact and Conclusions of Law." The order in Docket 03(UI)7400 is clearly interlocutory; it did not address the merits of petitioner's appeal, and it requires further action by the ESC.

In general, "there is no right to immediate appeal from an interlocutory order." *Flitt v. Flitt*, 149 N.C. App. 475, 477, 561 S.E.2d 511, 513 (2002) (citing N.C.G.S. § 1A-1, Rule 54(b) [(2003)]). However, N.C.G.S. § 7A-27(d) (2003) permits immediate appeal from an interlocutory order that:

(1) Affects a substantial right, or

(2) In effect determines the action and prevents a judgment from which appeal might be taken, or

(3) Discontinues the action, or

(4) Grants or refuses a new trial[.]

N.C.G.S. § 1-277(a) (2003) also states, in pertinent part, that appeal "may be taken from every judicial order or determination of a judge of a superior or district court . . . which affects a substantial right[.]"

In the case *sub judice*, we conclude the order in Docket 03(UI)7400 neither affects a substantial right, nor meets any other criteria for immediate appeal, and thus should be dismissed as interlocutory. *See, e.g., State ex rel. Employment Sec. Comm. v. IATSE Local 574*, 114 N.C. App. 662, 663-64, 442 S.E.2d 339, 340 (1994) (dismissing as interlocutory an appeal from superior court order which remanded ESC order to ESC Commission) (citing *Blackwelder v. Dept. of Human Resources*, 60 N.C. App. 331, 299 S.E.2d 777 (1983)). We also note that *Facet Enterprises v. Deloatch*, 83 N.C. App. 495, 350 S.E.2d 906 (1986), cited by petitioner, is a straightforward appeal from a final judgment, and does not involve remand by the trial court. Petitioner's appeal from Docket 03(UI)7400 is dismissed as interlocutory.

Appeal from Docket 03(UI)6077—Standard of Review

N.C.G.S. § 96-15 (2003) sets out "the standard procedure for claims for UI benefits, appeals within ESC-agency, and appeals from the ESC-agency final decision to Superior Court." *Employment Security Commission v. Peace*, 341 N.C. 716, 718, 462 S.E.2d 222, 223 (1995). The statute "provides that[:]

> (1) a decision will be made by an adjudicator, N.C.G.S. § 96-15(b)(2) [(2003)]; (2) the adjudicator's decision may be appealed to an appeals referee, N.C.G.S. § 96-15(c); (3) on ESC-agency's own motion, the Commission or a Deputy Commissioner may affirm, modify, or set aside the decision of the appeals referee, N.C.G.S. § 96-15(e); and (4) an appeal to the Superior Court is available after exhaustion of the remedies set out above, N.C.G.S. § 96-15(h).

*Peace*, 341 N.C. at 718, 462 S.E.2d at 223.

Under N.C.G.S. § 96-15(h), a claimant's petition for superior court review of an ESC decision "shall explicitly state what exceptions are taken to the decision or procedure of the Commission and what relief the petitioner seeks." Superior Court jurisdiction is limited to exceptions and issues set out in the petition. *See Graves v. Culp, Inc.*, 166 N.C. App. 748, 751, 603 S.E.2d 829, 831 (2004) (because "claimant made no exceptions to the ESC's findings in his petition for review nor did he allege any fraud or procedural irregularity" he "did not preserve those issues for review by the superior court and the court lacked jurisdiction to address them").

In reviewing a decision by the ESC, "[t]he same standard of review applies in the superior court and in the appellate division: 'the findings [of fact] of the Commission, if there is any competent evidence to support them . . . shall be conclusive[.]' . . . Accordingly, this Court, like the superior court, will only review a decision by the [ESC] to determine 'whether the facts found by the Commission are supported by competent evidence and, if so, whether the findings support the conclusions of law.' " *Davis v. Britax Child Safety, Inc.*, 163 N.C. App. 277, 281, 593 S.E.2d 97, 101 (2004) (quoting *In re Enoch*, 36 N.C. App. 255, 256, 243 S.E.2d 388, 389 (1978), and *RECO Transportation, Inc. v. Employment Security Comm.*, 81 N.C. App. 415, 418, 344 S.E.2d 294, 296 (1986)). Moreover:

> Even when the findings are not supported by the evidence, however, 'where there is no exception taken to such findings, they are

presumed to be supported by the evidence and are binding on appeal.' In the present case, the findings of fact were not challenged and, hence, are conclusive; the sole question on appeal therefore is whether the findings of fact support the Commission's conclusion that the claimant was disqualified for unemployment compensation.

*In re Hagan v. Peden Steel Co.*, 57 N.C. App. 363, 364, 291 S.E.2d 308, 309 (1982) (quoting *Beaver v. Paint Co.*, 240 N.C. 328, 330, 82 S.E.2d 113, 114 (1954)). *See also, e.g., Fair v. St. Joseph's Hosp.*, 113 N.C. App. 159, 161, 437 S.E.2d 875, 876 (1993) ("even if the findings of fact are not supported by the evidence, they are presumed to be correct if the petitioner fails to except") (citing *Hagan*, 57 N.C. App. at 364, 291 S.E.2d at 309).

---

Petitioner argues that the trial court erred by upholding the ESC's conclusions that (1) he was discharged for substantial fault, and that (2) reduction of the statutory period of disqualification was not justified by mitigating factors. We disagree.

[2] We first consider petitioner's argument that the Commission erred by concluding that he had been discharged for substantial fault not amounting to misconduct. In this regard, N.C.G.S. § 96-14(2a) (2003) provides that:

Substantial fault is defined to include those acts or omissions of employees over which they exercised **reasonable control** and which violate **reasonable requirements** of the job, . . . but shall not include (1) minor infractions of rules unless such infractions are repeated after a warning was received by the employee, (2) inadvertent mistakes made by the employee, nor (3) failures to perform work because of insufficient skill, ability, or equipment.

(emphasis added).

"The essence of G.S. § 96-14(2[a]) is that if an employer establishes a reasonable job policy to which an employee can conform, her failure to do so constitutes substantial fault. . . . An employee has 'reasonable control' when she has the physical and mental ability to conform her conduct to her employer's job requirements. . . . Reasonable control coupled with failure to live up to a reasonable employment policy equals substantial fault." *Lindsey v. Qualex, Inc.*, 103 N.C. App. 585, 590, 406 S.E.2d 609, 612 (1991) (citation omitted).

REEVES v. YELLOW TRANSP., INC.

[170 N.C. App. 610 (2005)]

In the instant case, petitioner failed to except to any of the ESC's findings of fact in his petition for review in Superior Court. Accordingly, the Commission's findings are conclusively presumed to be correct on appeal. These findings include, in relevant part, the following:

. . . .

2. The claimant began working for the employer on or about April 23, 2002. He last worked for the employer on March 18, as a dock worker/local driver.

3. The claimant was discharged for repeated problems and carelessness in the performance of his loading dock and driving duties.

4. The claimant failed to complete his trip sheet paperwork that he was required to complete.

5. On August 8, 2002, the claimant failed to properly fill out freight paperwork, including marking a freight bill that was short on freight while the claimant was present on the loading dock.

6. On September 8, 2002, the claimant mistakenly loaded a trailer. More specifically, the claimant failed to correctly load the freight into the correct trailer. The claimant's mistake was due to a lack of attention. The claimant was warned and suspended three days as a result of his mistake.

7. On the same day, the claimant mistakenly recorded freight as having come in on a trailer.

8. On February 5, 2003, the claimant failed to place a pallet of salt bags in a storage trailer as directed; and on February 18, 2003, the claimant failed to sweep out a trailer as directed. The employer proposed the claimant's discharge under the governing collective bargaining agreement with the claimant's union. The claimant's proposed discharge was submitted to a joint employer-union grievance committee.

9. The joint committee ruled that the failure to sweep out the trailer did not warrant discharge, but did warrant a disciplinary warning letter. However, the committee also upheld the discharge based on the February 5, 2003 failure to place a pallet of salt bags in a proper storage trailer. The employer

followed the required and approved disciplinary and discharge process. The claimant repeatedly failed to perform his job duties as required and was discharged on March 17, 2003.

On the basis of its findings of fact, the Commission concluded as a matter of law that petitioner had been dismissed for substantial fault, noting that "the claimant's own testimony and documents amounted to admissions of the claimant's failure to comply with the reasonable requirements of his job."

We conclude that the Commission's findings of fact support its conclusion of law that petitioner was discharged for substantial fault. We also conclude that Yellow Transportation's requirements that petitioner, *e.g.*, load and unload materials as directed, and keep proper records, were reasonable and were under petitioner's control. Accordingly, we conclude that the Commission did not err by concluding that petitioner was discharged for substantial fault, and that the trial court did not err by upholding the Commission's ruling. This assignment of error is overruled.

**[3]** We next consider petitioner's argument that the trial court erred by upholding the Commission's decision not to shorten the period of petitioner's disqualification from UI benefits.

N.C.G.S. § 96-14(2a) .(2003), provides in pertinent part that a claimant "shall be disqualified for benefits:

(2a) For a period of not less than four nor more than 13 weeks . . . if it is determined by the Commission that such individual . . . was discharged for substantial fault on his part connected with his work . . . Upon a finding of discharge under this subsection, the individual shall be disqualified for a period of nine weeks unless, based on findings by the Commission of aggravating or mitigating circumstances, the period of disqualification is lengthened or shortened within the limits set out above.

In the present case, the Commission concluded that claimant's "repeated failures do not justify mitigating the offense of substantial fault." This conclusion is supported by the Commission's findings of fact, and does not constitute error on the part of the Commission. Moreover, petitioner did not raise this issue by his petition, and thus did not preserve it for appellate review. We conclude that the Commission did not err by declining to reduce the period of petitioner's disqualification from UI benefits.

We have considered petitioner's remaining arguments, and find them to be without merit. Accordingly, the trial court's ruling in Docket 03(UI)6077 is affirmed.

Affirmed in part, dismissed in part.

Judges HUNTER and McCULLOUGH concur.